**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **CHAPTER VII** |
| **YELLOW POPLAR LUMBER** | ) | |
| **COMPANY, INC.** | ) | |
| | ) | **CASE NO. 17-70882** |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

This is a case proceeding under Chapter VII of the Bankruptcy Act of 1898, as amended.

11 U.S.C. § 1 *et seq.* This matter comes before the Court on the Chapter 7 Trustee's Motion

Seeking Approval of Interim Distribution to Unsecured Creditors (the "Trustee's Proposal") of

Yellow Poplar Lumber Company, Inc. (ECF No. 40) and objections filed by the heirs of two

claimants in this case: Daniel von Bremen[1] (ECF No. 46) and Willie Johnson[2] (ECF No. 47)

(respectively, the "von Bremen heirs" and the "Johnson heirs"). The Court held a hearing on

these matters on October 4, 2018, and has reviewed supplemental memoranda from the Chapter

7 Trustee (the "Trustee") and the claimants.

## FACTUAL BACKGROUND

On July 17, 1928, White Oak Lumber Company filed an involuntary Chapter 7 petition in

the United States District Court for the Western District of South Carolina to have Yellow Poplar

Lumber Company, Inc. ("Yellow Poplar") adjudged a bankrupt. The court adjudged Yellow

Poplar a bankrupt and closed the case in 1931.

---

[1] Specifically, Robert W. von Bremen, Janet von Bremen Shatto, and Barbara von Bremen Lokos collectively raised an objection to the Trustee's Proposal.
[2] Charles R. Collins and Bobby Johnson objected as the sole heirs of Willie Johnson.

In 2013, the United States District Court for the District of South Carolina reopened and transferred the case to the District Court for the Western District of Virginia after a dispute involving Yellow Poplar arose as to the ownership rights of gas estates on parcels of land located in Virginia.  The district court approved the parties' settlement of the ownership rights on June 28, 2017, pursuant to which Yellow Poplar stood to receive approximately $2 million of gas royalties.  In light of Yellow Poplar's prior bankruptcy, the district court referred the matter to this Court for administration.  The gas wells continue to produce and generate revenue for the Yellow Poplar estate.

Since this case was resurrected, the Trustee has, with the aid of a genealogist, identified many of the original claimants and their existing heirs or successors in interest.  (*See* Trustee's Status Reps., ECF Nos. 31, 36, 62.)  Accordingly, the Court ordered the Trustee, and any other party who wished, to submit a memorandum addressing whether interest is payable to the creditors in any distribution made in this case and, if interest is appropriate, what rate should be used.[3]  (ECF No. 23.)

Upon reviewing the parties' memoranda and status reports filed by the Trustee, the Court further ordered the Trustee to file a proposed interim distribution for publication to notify any unidentified successors in interest to the claimants and shareholders of Yellow Poplar.  (ECF No. 38.)  Any party in interest would then have an opportunity to object to the Trustee's proposal.  In response, the Trustee filed the Motion at issue here, proposing to make distributions with interest

---

[3] The Court's order also directed the parties to address the notice required by due process to creditors and shareholders informing them of any decision by the Court affecting distribution on the claims, but that issue has since been resolved.  Pursuant to the Court's order on September 10, 2018, the Trustee published notice in the *Virginia Mountaineer*, the *Dickenson Star*, the *Pickens County Courier*, the *Ironton Tribune*, *The Daily Independent*, *The Herald Dispatch*, and the *Wall Street Journal*.

at a rate of 2.4%.  Both the von Bremen and Johnson heirs objected to the interest rate proposed by the Trustee.

In addition to their objection on the issue of interest, the von Bremen heirs have challenged claim (f) in the Trustee's Proposal.  Specifically, the Trustee has listed Thomas Zimmerman as the recipient of any distribution under claim (f) as the assignee of Mr. von Bremen's original proof of claim.  Thus, under the terms of the Trustee's Proposal, the von Bremen heirs would not receive any funds distributed on the claim originally held by their ancestor.  Instead, the von Bremen heirs suggest that the alleged assignment was invalid and that they are now entitled to distributions as successors in interest to Daniel W. von Bremen.

The Court held a hearing on October 4, 2018 at which two issues were addressed in connection with the Trustee's proposed distribution: (1) whether the Estate of Thomas Zimmerman was entitled to distribution under a claim assignment allegedly executed in 1929, and (2) what interest would provide an appropriate distribution on claims based on the original date of filing in 1928.  At the conclusion of the hearing, the Court provided time for any interested party to file supplemental memoranda and took the matter under advisement.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the referral made to this Court by Order from the District Court on June 28, 2017 by Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

## I.    Distribution to the Estate of Thomas Zimmerman

In his Proposal, the Trustee did not include any distribution to Mr. von Bremen or the heirs of his estate.  Rather, the Trustee listed as a general unsecured claimant, "Thomas L. Zimmerman, assignee of Daniel Von Bremen."  The von Bremen heirs have objected, alleging that proof of the assignment was never validly presented to the Bankruptcy Referee. Specifically, they assert that the Referee failed to give notice of the assignment as required under the Bankruptcy Act, and that this lack of notice effectively invalidated the assignment such that Mr. von Bremen retained his claim throughout the bankruptcy proceedings.  To determine whether the von Bremen heirs have a valid claim to distribution here, the Court must review the record from the original case and the Bankruptcy Act as it existed at the time.

Section 57(d) of the Bankruptcy Act states that "[c]laims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest, or their consideration be continued for cause by the court upon its own motion."  11 U.S.C. § 57(d) (1898).  While the Act sets forth certain requirements, it was "neither necessary nor sufficient for the presentation of the claim to conform to the requisites of technical pleading."  3 *Collier on Bankruptcy* 130 (14th ed. 1977). Rather, the proof of claim more closely resembled a deposition than a pleading.  *Id.*  To file a valid proof of claim, a creditor must have filed "a statement under oath, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditors."  11 U.S.C. § 57(a) (1898). Once a proof of claim was filed, such a claim was generally allowed absent some material defect or objection to it.  2 Harold Remington, *Remington on Bankruptcy* 469 (1956).

The Bankruptcy Act did not prevent an original claimant from assigning his claim to another.   Specifically, Bankruptcy Act General Order 21 governed the assignment of claims in bankruptcy, setting out different rules depending on the timing of the claim assignment. Relevant to this case, General Order 21(3) states,

> Upon the filing of satisfactory proof of the assignment of a claim, proof of which has been filed, the referee shall immediately give notice by mail to the original claimant of the filing of such proof of assignment and that objection thereto must be made within ten days.  If no objection be made within ten days, or within further time allowed by the referee, he shall make an order subrogating the assignee to the original claimant.  If objection be made, he shall proceed to hear and determine the matter.

4B *Collier on Bankruptcy* 1536 (14th ed. 1978).

Thus, where a creditor has filed a proof of claim and subsequently assigned that claim to a third party, the third party may provide proof of the assignment to the referee and receive the benefits of that claim.  General Order 21(5) suggests that the best proof of a claim assignment is the document of assignment itself, acknowledged by "any of the officers enumerated in § 20 of the Act."  *Id.* at 1537; *see also* Remington, *supra* at 364–65.  The issue in the present case, however, is what effect any failure of the referee to provide notice would have on the assignment of a claim.

Daniel W. von Bremen filed a proof of claim dated January 15, 1929, in the amount of $9,033.60.  After reviewing the docket and notes from meetings of the creditors in this case, it does not appear the referee or district court found any defect in Mr. von Bremen's claim, nor did any party object.  Moreover, the Referee later made at least one distribution to Mr. von Bremen *after* he allegedly assigned his claim.  (*See* Suppl. Resp. & Obj. to Trustee's Mot., ECF 60, Ex. F (noting that Mr. von Bremen received a $445.82 dividend in the final distribution of the original Yellow Poplar case); Obj. to Trustee's Mot., ECF 46, Ex. B (displaying the docket of the original

Yellow Poplar case, which shows the transfer of Mr. von Bremen's interest on February 8, 1929 and a later order from the district judge for payment of a dividend in November 1929).)  Thus, it appears Mr. von Bremen held a valid claim against Yellow Poplar with respect to his original proof of claim.

Also available in the record, however, is a document that appears to assign Mr. von Bremen's claim to Mr. Zimmerman, his attorney.  The affidavit in the record is signed by Mr. von Bremen, notarized by an officer of the court pursuant to section 20 of the Bankruptcy Act,[4] and dated February 8, 1929.  Furthermore, the court's docket contains an entry for February 8, 1929 that states "Transfer of interest of D.W. von Bremen in bankrupt estate."

Yet, it remains unclear whether the Referee ever acknowledged the assignment and delivered notice as required by General Order 21.  As the von Bremen heirs point out, there is no subsequent docket entry indicating that the Referee ever provided notice to Mr. von Bremen, nor is there any evidence that the Referee ever made any distributions to Mr. Zimmerman in accordance with the assignment.  Conversely, the evidence in the record shows that all distributions on Mr. von Bremen's original claim of $9,033.60 were made to Mr. von Bremen himself, including at least one after the assignment was executed and docketed.  Further, there is no evidence in the record that Mr. Zimmerman ever objected to the latter distribution.

The von Bremen heirs argue that the Referee's failure to provide notice as required in General Order 21 sufficed to bar the Referee from later distributing any funds to Mr. Zimmerman pursuant to the alleged assignment.  The Court is not convinced this is true.

---

[4] Although it is unclear based solely on the information provided on the affidavit whether the notary in this case is an "enumerated officer" within the meaning of section 20 of the Act, the Court can infer such a finding based on the record in this case.  Similar to an assignment, a proof of claim must be acknowledged by an officer as enumerated in section 20.  The same signature and notary stamp appear on Mr. von Bremen's assignment affidavit as appear on his proof of claim.  Because the district court and Referee acknowledged the validity of Mr. von Bremen's proof of claim by distributing funds to him during the bankruptcy case, it follows that the individual acting as a notary here would appear to have been included in the definition of an "officer" for the purposes of section 20.

Although the rule states that a court "shall" provide notice, it is not clear that Congress intended a bankruptcy referee's mistake to bar a claim assignment in this fashion.  Moreover, the Court questions whether notice to Mr. von Bremen would have been necessary considering that the affidavit he signed indicates his intention to have the claim assigned within the bankruptcy proceedings—clearly he had notice of the assignment.  Nonetheless, it is difficult to determine based on the record before the Court why the Referee in this case declined to acknowledge Mr. von Bremen's assignment.  Whether based on a lack of notice or some other defect, the fact remains that the original referee in this case disbursed funds to Mr. von Bremen after having received evidence of the assignment.

*Remington on Bankruptcy* states, "If a claim is assigned after it has been proved and filed, the assignment is merely of the rights of the claimant and does not entitle the assignee to recognition in the proceedings unless he establishes that he has become the owner." *Remington* § 900.  Thus, although a valid assignment may occur, it must still be proved to the satisfaction of the referee.  While the Court cannot and does not say that Mr. von Bremen's assignment was necessarily invalid, the evidence indicates that Mr. Zimmerman nonetheless failed to establish his rights in the bankruptcy case.  For whatever reason, the Bankruptcy Referee did not provide notice to Mr. von Bremen and did not make any distributions to Mr. Zimmerman.  Recognizing Mr. Zimmerman's right to distribution now would override the referee who presided over the original case and had the opportunity to hear evidence from the parties involved.  Accordingly, the Court concludes Mr. von Bremen, and thus his successors in interest, remain the valid owners of any distributions from this Court made upon his original claim.

## II.    Interest on Distributions

The next question before this Court is whether and to what extent the successors in

interest to Yellow Poplar's creditors should receive interest on any distributions.  The

Bankruptcy Act's general rule was that "interest on the debtors' obligations ceases to accrue at

the beginning of proceedings."  *Vanston Bondholders Protective Committee v. Green*, 329 U.S.

156, 163 (1946).  As the Fourth Circuit has stated previously, there are generally three reasons

for this rule:

> (a) The delay in payment is not the act of the debtor but is an act of law for the
> mutual benefit of the creditors. (b) In the case of claims bearing different rates of
> interest, it would be inequitable to permit the running of interest to increase the
> proportion of the assets to which some of the creditors are entitled at the expense
> of the other creditors while the estate is in the process of administration. (c) If all
> claims bear the same rate of interest, the addition of interest would not change the
> proportion of assets to which each would be entitled, and the computation may
> therefore be omitted as a useless act.

*Littleton v. Kincaid*, 179 F.2d 848, 852 (1950).

However, "exceptional" circumstances may exist, such that the Court should grant

interest from any surplus funds after distribution.  *Time Oil Company v. Wolverton*, 491 F.2d 361

(9th Cir. 1974) ("[T]here exists a corollary to that rule which recognizes that exceptional

considerations of equity may dictate that surplusage pass to one other than the bankrupt."); *U.S.*

*v. Bass*, 271 F.2d 129, 130 (9th Cir. 1959) ("[C]ourts have . . . allowed interest where (1) the

alleged bankrupt proves solvent, . . . (2) the security held by the creditor as collateral produces

income after filing of the petition . . . and (3) the security is sufficient to pay interest as well as

the principal of the claim.").  Accordingly, "[i]t is manifest that the touchstone of each decision

on allowance of interest in bankruptcy, receivership and reorganization has been a balance of

equities between creditor and creditor or between creditors and the debtor."  *Vanston*, 329 U.S. at

165.  And, when a debtor's assets are sufficient to pay all claims in full, "interest is payable out

of this surplus to the date of payment." *Littleton*, 179 F.2d at 852; *see also Johnson v. Norris*, 190 F. 459 (5th Cir. 1911) (examining cases in which creditors were entitled to collect interest where the estate had a surplus of funds after paying claims).

In this case, equity calls for allowing creditors to receive interest on their claims up to the date of distribution. According to the Trustee's Proposal, approximately $135,000 in general unsecured claims remain unpaid since Yellow Poplar's discharge. After paying the remaining claims from the nearly $2 million held by the Trustee, the remaining surplus will be sufficient to pay interest on those claims as intended in the cases cited above. The von Bremen and Johnson heirs have estimated that after accounting for inflation, those funds would have a value of almost $2 million. While the Court does not agree with their method of backing into an interest rate, it nonetheless recognizes a need to allow interest on the unpaid claims.

The question, then, is at what rate should interest be applied? The creditors here discuss potential methods for paying out interest: simple interest at 7% per year reflecting the legal rate in South Carolina and the "present value approach," which they appear to base on an online inflation calculator. (ECF No. 46). In support of their inflation-based approach, the creditors assert that the Court could simply recognize the equity holders' interest in future oil and gas royalties and pay from the existing estate the interest to remaining creditors. According to their calculations, that would require the Trustee to distribute nearly all the estate's currently held funds to unsecured creditors and leave the equity holders with their right to future royalties. Conversely, the Trustee suggests the Court apply the federal judgment rate as of the conclusion of the case, based on case law interpreting portions of the current Bankruptcy Code. With the help of a Certified Public Accountant who researched the federal rate from the date of filing this case to the date the case concluded in 1931, the Trustee has proposed a rate of 2.4%.

*In re Schoeneberg* tackled a similar question under the Bankruptcy Code by applying precedent interpreting the provisions of the Bankruptcy Act and found that "post-petition interest is payable either at the contract rate, at the statutory rate . . . or, if there is no applicable statute and no rate was contracted for, at the state judgment rate."  156 B.R. 963, 972 (Bankr. W.D. Tex. 1993).  Other courts, however, have also allowed interest at the federal judgment rate.  *See, e.g.*, *In re Beguelin*, 220 B.R. 94 (B.A.P. 9th Cir. 1998);  *In re Melenyzer*, 143 B.R. 829 (Bankr. W.D. Tex. 1992).  In *Melenyzer*, the Western District of Texas noted the potential issues with contract or state interest rates—namely, that these may lead to the inequitable results that the Fourth Circuit noted in *Littleton*.  *Melenyzer*, 143 B.R. at 832.  For example, the court recognized that contracts or state laws may each provide for different interest rates.  Thus, in a situation where the estate has funds to pay some interest but insufficient to pay interest claims in full, using these rules would result in some creditors receiving "a disproportionately large percentage of the remaining assets compared to their underlying unsecured claims, to the prejudice not of the debtor, but of other, otherwise equally situated, unsecured creditors."  *Id.*

Conversely, the federal judgment rate "assures a ratable distribution" and "affords all affected parties a predictable, easily ascertainable, nationally uniform rate and best comports with the analytical posture of claims *vis-à-vis* the federal bankruptcy."  *Id.* at 833.  Additionally, because a claim against a bankruptcy estate is allowed as of the date of filing, the *Melenyzer* court found that "the federal judgment rate selected should be that in effect as of the date of filing, as opposed to the date of distribution."  *Id.*

The Court finds the case law supporting the Trustee's position to be persuasive and agrees that applying the federal judgment rate would provide the most equitable result in this case.  However, the Court disagrees with the 2.4% rate proposed by the Trustee based on the

10

federal judgment rate at the conclusion of Yellow Poplar's case.  As amended, 28 U.S.C. § 1961

provides that "[s]uch interest shall be calculated . . . at a rate equal to the weekly average 1-year

constant maturity Treasury yield."  Prior to amending this provision in 2000, however, the

judgment rate was based on the "average accepted auction price for the last auction of fifty-two

week United States Treasury bills."[5]  Thus, the appropriate rate should be calculated based on the

one-year rate of U.S. Treasury Bills on date the petition in this case was filed, or 3.6%.  Such an

accrual date is also consistent with the current position taken by the United States Trustee in

cases under the Bankruptcy Code.


## CONCLUSION

The Court finds that any distribution on claim (f) in the Trustee's Proposal should be paid

to those claiming through Daniel W. von Bremen.  Although the record from the original

proceedings of this case indicate that Mr. von Bremen assigned his claim to Thomas L.

Zimmerman, the original Referee and district court did not recognize that assignment.  The Court

declines to overrule that position based on the record before it.  Additionally, the Court holds

than the remaining general unsecured claims listed on the Trustee's Proposal shall be paid with

interest accruing at a per annum rate of 3.6% in accordance with U.S. Treasury Bill rate in effect

on the date the petition was filed against Yellow Poplar.  With the modifications above, the

Trustee's proposed distribution is approved, subject to the claimant's successors in interest

providing to the Trustee and Court sufficient proof of their entitlement to the funds in question.

---

[5] The Court recognizes that this language was added in 1982, long after the original Yellow Poplar case concluded. Prior to the amendment, however, section 1961 required payment of interest "at the rate allowed by State law."  As discussed above, the use of state judgment rates has the potential to create an inequitable distribution in cases such as this where more than one rate may apply.  As the Court has discretion to allow interest, it will also exercise its discretion to set the rate, and the Court believes the one-year rate on U.S. Treasury Bills is most appropriate under the unique circumstances of this case.

A separate Order will be entered contemporaneously herewith.

Decided this 2nd day of November, 2018.

_____
UNITED STATES BANKRUPTCY JUDGE