

**SIGNED THIS 15th day of July, 2019**

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **CHAPTER VII** |
| **YELLOW POPLAR LUMBER** | ) | |
| **COMPANY, INC.** | ) | |
| | ) | **CASE NO. 17-70882** |
| | ) | |
| **Debtor.** | ) | |

## MEMORANDUM OPINION

This is a case proceeding under Chapter VII of the Bankruptcy Act of 1898, as amended. 11 U.S.C. § 1 *et seq.* This matter comes before the Court on the Motion to Approve Attorney Fees Pursuant to the Common Fund Theory ("Motion") (ECF No. 85) filed by counsel for the heirs of two creditors in this case, Daniel von Bremen and Willie Johnson, ("Counsel") and a response filed thereto by the Chapter 7 Trustee (the "Trustee") (ECF No. 92). Counsel seeks payment by unrepresented unsecured creditors in this case of a fee enhancement of $164,164.90 pursuant to the common fund theory. (ECF No. 85.)[1] The Court held a hearing on this matter on May 2, 2019 and has reviewed supplemental memoranda from Counsel and the Trustee.

---

[1] In his Supplemental Memorandum, Counsel requested a fee enhancement of only $125,000. (ECF No. 97, at 3.)

**FACTUAL BACKGROUND**

On July 17, 1928, White Oak Lumber Company filed an involuntary Chapter 7 petition in the United States District Court for the Western District of South Carolina to have Yellow Poplar Lumber Company, Inc. ("Yellow Poplar") adjudged a bankrupt. The court adjudged Yellow Poplar a bankrupt and closed the case in 1931. In 2013, the United States District Court for the District of South Carolina reopened and transferred the case to the District Court for the Western District of Virginia after a dispute involving Yellow Poplar arose as to the ownership rights of gas estates on parcels of land located in Virginia. The parties ultimately agreed to a settlement of the ownership rights, pursuant to which Yellow Poplar stood to receive approximately $2 million in gas royalties. In light of Yellow Poplar's prior bankruptcy, the district court referred the matter to this Court for administration.

Since the case's resurrection, the Trustee has, with the aid of a genealogist, identified many of the original claimants and their existing heirs or successors in interest. Accordingly, the Court ordered the Trustee, and any other party who wished, to submit a memorandum addressing whether interest is payable to the creditors in any distribution made in this case and, if interest is appropriate, what rate should be used. Pursuant to that Order, the Trustee filed a proposed distribution to unsecured creditors with interest at a rate of 2.4%. On behalf of the von Bremen and Johnson heirs, Counsel objected to the rate of 2.4%, advocating instead for a higher rate of 7% based on the legal rate in South Carolina when the case was initiated. This Court awarded 3.6% interest. On appeal to the district court, however, Counsel successfully argued that unsecured creditors should receive interest at 7%, resulting in a significantly larger pool of assets to be distributed to general unsecured creditors.[2]

---

[2] Per Counsel's calculations, the pool increased from $418,964.56 to $1,158,938.57, an increase of nearly $740,000.

2

Upon resolution of the appeal to the district court, Counsel filed his Motion seeking a fee enhancement in the amount of $164,164.90 pursuant to the common fund doctrine. (ECF No. 85.) The Trustee has objected, suggesting that the common fund theory does not apply outside of class-action litigation or, specifically, under the Bankruptcy Act. (ECF No. 92.) Regardless, the Trustee argues that the circumstances of this case do not warrant such a substantial increase in fees or contribution from creditors benefitting from Counsel's work. (ECF No. 98.) In their pleadings, the parties largely focus on the issue of whether the common fund doctrine applies in bankruptcy cases and to what extent counsel should recover, if at all. However, the determinative question in this case is not whether the common fund theory applies, but whether the Court has authority to grant Counsel a fee enhancement from assets of the bankruptcy estate. Because no provision of either the Bankruptcy Act or its successor the Bankruptcy Code provides a method to award fees in this circumstance, the Court will deny Counsel's Motion.[3]

## JURISDICTION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the referral made to this Court by Order from the District Court on June 28, 2017.

## CONCLUSIONS OF LAW

The general rule in the United States is that every litigant must bear the expense of his own attorney's fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). However, the common fund doctrine "stands as a well-recognized exception to the general principle," allowing "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself

---

[3] For clarity, the Court will refer to the Bankruptcy Act of 1898 and its amendments as the "Bankruptcy Act," and will refer to the current statutory scheme as it has evolved from the Bankruptcy Reform Act of 1978 forward as the "Bankruptcy Code." Thus far, this case has proceeded governed by the Bankruptcy Act. However, because Counsel cites to numerous cases applying the Bankruptcy Code, the Court will address both statutory schemes in its analysis.

3

or his client . . . [to receive] a reasonable attorney's fee from the fund as a whole." *Id.* "It is founded upon the principle that when one who, while establishing his own claim, also establishes the means by which others may collect their claims, a chancellor in equity may award counsel fees to the trail blazer out of the property made available for the satisfaction of all claims." *Gibbs v. Blackwelder*, 346 F.2d 943, 945 (4th Cir. 1965). Writing for the Fourth Circuit, Judge Haynsworth eloquently stated that courts apply the doctrine "so that the one who led in hewing the path to victory is not left saddled with extensive attorney's fees, which need not be incurred by his more timid fellows who held back until the fruits of the pioneer's success were laid before them." *Id.* Rooted in principles of equity, "[t]he doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478. Significantly, the common fund doctrine does not merely spread the cost of litigation among benefitting parties, but also allows an attorney to collect an extra award of fees. This is so even when the attorney is fulfilling the terms of the engagement with his own client. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769–70 (9th Cir. 1977).

Whether a court may apply the doctrine to allow fee enhancements in bankruptcy proceedings is a point of disagreement between the parties here. Courts have advanced the concept to varying degrees since the Supreme Court originally acknowledged its existence in *Trustees v. Greenough*, 105 U.S. 527 (1881). As Counsel noted in his supplemental brief, *Greenough* suggested that "the rule that a party who recovers a fund for the common benefit of creditors is entitled to have his costs and expenses paid out of the fund, prevails in bankruptcy cases." *Id.* at 534. The Supreme Court's comment, though, unfortunately provides little guidance as to when lower courts should apply the doctrine, especially considering Congress

4

later enacted sweeping changes to bankruptcy laws with the passage of the Bankruptcy Act in 1898. Consequently, several courts have limited application of the common fund doctrine in bankruptcy matters—both in Act and Code cases—with some even suggesting that it has no application in bankruptcy cases at all. *See, e.g.*, *Stickney Corp. v. Chi. Milwaukee Corp. (In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.)*, 840 F.2d 1308, 1318 n.9 (7th Cir. 1988) ("Although unnecessary to our decision, we also agree with the special master's recommendation that the 'common-fund' doctrine does not operate to authorize the payment of fees or costs *from the bankruptcy estate*."); *Guerin v. Weil, Gotshal & Manges*, 205 F.2d 302 (2d Cir. 1953) ("The principle of the Greenough case . . . is confined by the Act to the recovery of 'reasonable costs and expenses' where 'the property of the bankrupt, transferred or concealed by him . . . shall have been recovered for the benefit of the estate . . . by the efforts and at the cost and expense of one or more creditors.'"); *In re Chewning & Frey Sec., Inc.*, 328 B.R. 899, 919 (Bankr. N.D. Ga. 2005) ("[T]he common fund doctrine contravenes the purpose and spirit of the Bankruptcy Code, and is inconsistent with statutory distribution scheme articulated therein."); *In re Maimone*, 41 B.R. 974, 984 (Bankr. D.N.J. 1984) ("The court concludes that it would be inappropriate to apply the equitable fund doctrine to a complex and protracted bankruptcy proceeding in which many parties have at various times advanced many Motions, Complaints, and positions. . . . This doctrine would encourage intermeddling by parties having a slight contingent interest in a case in the hope that they might be permitted to recover attorneys' fees for the efforts. It is preferable, in the bankruptcy context, to have each party represent its own interests without such a distortion in incentives. Doubtless, the equitable fund doctrine may be applicable in an unusual case, but this is not such a case.").

Given this context, it is not surprising that Counsel spends the majority of his Motion attempting to persuade the Court that the common fund doctrine is, in fact, applicable to bankruptcy cases. To that end, Counsel cites numerous cases he suggests show that the Court may and should award him a fee enhancement. He is correct that many other courts have either granted fee applications under the common fund doctrine, or at least recognized the doctrine's utility in bankruptcy courts. *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) (granting fees to counsel for the trustee); *Gordon v. Internal Revenue Serv. (In re Johnson)*, 593 B.R. 895 (Bankr. N.D. Ga. 2018) (recognizing a creditor's right to payment from estate funds for pre-petition litigation); *Comm. of Creditors Holding Unsecured Claims v. Sable, Makoroff & Gusky, P.C. (In re Second Pa. Real Estate Corp.)*, 192 B.R. 663 (Bankr. W.D. Pa. 1995) (awarding payment to counsel who negotiated a pre-petition settlement on behalf of the debtor); *In re Farah*, 141 B.R. 920 (Bankr. W.D. Tex. 1992) (granting a fee application for debtor's counsel in a Chapter 11 case). Thus, insofar as Counsel argues that the common fund doctrine applies in bankruptcy court, the Court agrees and acknowledges that "exceptional circumstances" might occur in a bankruptcy case that warrant its use. As stated above, however, the issue here is not whether the common fund doctrine applies, but whether the Court has the authority to award Counsel fees from the estate in the circumstances of this case.

A decision from the Seventh Circuit best illustrates this issue as it relates to the Bankruptcy Code. *In re Fesco Plastics Corp.*, 996 F.2d 152 (7th Cir. 1993). In *Fesco*, the debtor filed its petition under Chapter 11 of the Bankruptcy Code. *Id.* at 153. Several creditors chose not to file proofs of claim because their claims were listed as undisputed, noncontingent, and unliquidated such that they were "deemed filed" under 11 U.S.C. § 1111(a). *Id.* at 153–54. When the court converted the case to Chapter 7, many of the creditors still did not file proofs of

claim because their claims were already "deemed filed." *Id.* at 154.  As no proofs of claim were filed, the trustee disputed their claims and the bankruptcy and district courts found that the creditors' claims were barred. *Id.*

As in this case, counsel for one group of the "deemed filed" creditors took the lead by appealing that determination to the Seventh Circuit and ultimately succeeded in showing that those creditors should recover equally to those with timely filed proofs of claim.  *Id.*  Counsel then sought payment under the common fund doctrine from the unrepresented "deemed filed" creditors on the theory that, "thanks to [him] their claims are now deemed filed, and they are recovering on those claims to the same extent as all other unsecured creditors." *Id.* at 157.

The court ultimately held that the common fund theory did not apply.  In doing so, it highlighted the root of the problem in this case—that regardless of whether application of the common fund doctrine is proper, the Court cannot award fees without statutory authority:

> As noted earlier, § 105 of the Bankruptcy Code states that a bankruptcy court may exercise its equitable power only as necessary to carry out the provisions of the Code.  The Code specifies when attorney's fees may be awarded.  See 11 U.S.C. 327 to 330, 1103, 503(b)(4).  Since none of these provisions applies to Wolff, it would seem that awarding fees under the common fund doctrine is beyond the bankruptcy court's mandate.  Wolff, however, maintains that it is within the bankruptcy court's power because he seeks fees from the . . . creditors only, not from the estate, and therefore the Code's provisions are completely irrelevant.  In other words, the estate will not lose a dime by giving him fees out of the common fund; all he asks is that the court order the trustee to take the money out of the distributions for him.  But a bankruptcy court is simply not authorized to do whatever is necessary to reach an equitable result; it may only do whatever is necessary to enforce the Code, and the Code does not address the situation here.  Though it would obviously make Wolff's life much easier if the trustee collected his fees for him, the mission of the bankruptcy court is to administer the estate under the Code, not to settle side issues between creditors.

*Id.*  Other courts have similarly declined to extend the reach of their equitable powers under § 105 to award fees not otherwise provided for in the Code.  *See Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1334 (5th Cir. 1993) ("[T]he powers granted

by [§ 105] must be exercised in a manner that is consistent with the Bankruptcy Code. . . . The 'statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986))); *In re Lloyd Secs.*, 163 B.R. 242 (Bankr. E.D. Pa. 1994) ("[I]f the statute in issue does not expressly provide for same, the equities in favor of the party seeking compensation, even when aided by a broad statutory grant of residual equitable powers to the court as is provided in 11 U.S.C. § 105(a) of the Bankruptcy Code, cannot support the granting of compensation from other interested parties or the Debtor's estate."), *rev'd in part*, 183 B.R. 386 (E.D. Pa. 1995).

This sentiment did not originate with the current Bankruptcy Code, however, as many decisions interpreting its precursor, the Bankruptcy Act, similarly limited fee awards for creditors' attorneys. For example, *Cox v. Elliott* sought to determine "whether under the Bankruptcy Act . . . attorneys for creditors, not employed by the trustee nor authorized by the court, may be allowed fees to be paid out of the estate for services which benefit the creditors but do not augment the funds in the hands of the trustee."[4] *Cox v. Elliott (In re Calhoun Beach Club Holding Co.)*, 122 F.2d 851 (8th Cir. 1941). Although *Cox* does not expressly implicate the common fund doctrine, it nonetheless addresses a court's equitable powers and sheds light on the concerns later raised by *Fesco* with paying a creditor's attorney from estate assets:

> It is conceded that the Bankruptcy Act makes no provision for the payment of counsel fees in ordinary bankruptcy proceedings to attorneys for creditors; but

---

[4] With this statement, the Eighth Circuit highlights another concern this Court has in awarding fees under the common fund doctrine—namely, that Counsel did not, in fact, create or increase the fund at issue, but merely diverted assets for distribution from one class to another. *See id.* at 852 ("No assets were brought into this estate through petitioners' (appellees') efforts, and the only basis for an allowance to them is the fact that a net saving accrued to the estate as a result of the proceedings brought by them."). Counsel's efforts certainly increased the proposed distribution to unsecured creditors from the estate but, as in *Cox*, he did not alter the fund as it existed in the hands of the Trustee—he did not create the fund, add to the estate, or recover assets in which others will share. Thus, the Court questions whether or to what extent it should award a fee enhancement even if it had the authority to do so.

> appellees contend, and the referee found, that the court "has inherent equitable power, in the absence of specific statutory authorization or inhibition to make an allowance out of the estate under the given circumstances."  We do not think so. "The Bankruptcy Act carefully regulates the compensation and expenses which may be allowed in bankruptcy." . . . In the carefully worded allowances provided for in the Act "there is implied an exclusion of other allowances. . . . The present Bankruptcy Act plainly endeavors to restrict allowances from the bankrupt estate."

*Id.* at 852 (citations omitted).

Numerous other Act-era decisions further support the *Cox* and *Fesco* holdings.  *See Leonard v. Joslyn (In re Joslyn)*, 224 F.2d 223, 225 (7th Cir. 1955) ("Attorneys may collect their fees from the bankrupt estate only as specifically provided by the Act. . . . The Act does not provide that attorneys for non-petitioning creditors may recover from the estate for the services rendered by appellants."); *Guerin*, 205 F.2d at 304 ("'It is well settled that the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided by the Act.' . . . Although it has been broadly stated that a bankruptcy court is a court of equity, . . . the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act . . . ." (citations omitted)); *In re Roadarmour*, 177 F. 379, 381 (6th Cir. 1910) (denying fees for a creditor's attorney where the attorney could not identify any statutory authority in support of his application).  *But see In re Little River Lumber Co.*, 101 F. 558 (W.D. Ark. 1900) (affirming a decision to award attorney's fees even where counsel did not specify a provision of the Act allowing such compensation).

It is also helpful to consider the words of a leading treatise on the Bankruptcy Act regarding what attorney's fees are allowed under that body of law.  Section 2667 of *Remington on Bankruptcy* appears to address this situation directly: "Although the services of an attorney employed to represent one creditor may actually have redounded to the benefit of a number of others, this is not, of itself, ground for assessing the charges either against the estate or the

9

group." 6 James M. Henderson, *Remington on Bankruptcy*, § 2667 (5th ed. 1952). Additionally, § 2666 reiterates the principles espoused in *Cox*, stating "[u]nless they represent petitioning creditors as such in an involuntary case, or manage to be appointed attorney for the trustee or a receiver, [creditors' attorneys] are not ordinarily entitled to any compensation allowance out of the funds [in bankruptcy]." *Id.* § 2666.

Counsel does not address the Act or Code in his Motion and has not identified any provision that provides for payment of a non-petitioning creditor's attorney's fees from property of a Chapter 7 (or Chapter VII under the Act) debtor's estate. Nor has the Court found such authority. Instead, Counsel cites numerous cases that address the common fund doctrine and asks the Court to find that his case is "more analogous to those cases where bankruptcy courts have granted fees based upon the common fund theory."[5] (ECF No. 91, at 4.) Reviewing those decisions, however, reveals that their outcomes do not conflict with the principles outlined above. For example, Counsel cites *In re Churchfield Management & Investment Corp.*, 98 B.R. 838 (Bankr. N.D. Ill. 1989), in which the court granted two common-fund fee applications for pre-petition and class-action counsel. However, it did so pursuant to § 330 of the Bankruptcy Code. *See also In re Farah*, 141 B.R. at 923–26 (granting a fee enhancement to debtor's counsel under § 330); *In re Paolino*, 71 B.R. 576, 584 (Bankr. E.D. Pa. 1987) (considering an application for expense reimbursement under § 503 in relation to "fund in court" or common fund cases).

---

[5] Counsel cited more than twenty-one cases in his supplemental brief, most of which only tenuously relate to the issue presented here. As mentioned above, Counsel appears to have cited a majority of these simply to illustrate that bankruptcy courts have considered the common fund doctrine in the past. Most, however, have facts wholly distinguishable from those in the present case—some merely mention the common fund doctrine as a consideration in fee applications and others deny fees requested under the doctrine. In fact, Counsel admits in his brief that many of the cases "contain a discussion of the common fund theory without ruling on its applicability to the case, or deny fees based on the common fund theory, but are distinguishable from the unique facts of this case." (ECF No. 91, at 2–3.) Although the Court has reviewed each of these cases, it will not provide a lengthy discussion regarding each, and will instead focus on those more relevant to the issue at hand.

Thus, the applicants in those cases did not merely rely on the courts' equitable powers, but instead identified specific authority allowing the courts to grant the requested relief.

Of the other cases Counsel cites in his favor, most contain facts easily distinguishable from this case. In *In re Johnson*, the court found that a pre-petition creditor, who succeeded in avoiding a transfer of property the debtor made prior to filing bankruptcy, was entitled to compensation under the common fund doctrine. 593 B.R. at 914. Although another party contended that recovery from the bankruptcy estate was "inconsistent with the scheme of distribution provided under federal bankruptcy law," the court nonetheless allowed the fees. *Id.* at 913. Among other things, it noted that the creditor "did not intentionally assume the risk that any potential recovery would be insufficient to satisfy his claim or legal fees based on an administratively insolvent bankruptcy estate. . . . Here, [the creditor's] attorney obtained an order setting aside the Transfer before the Debtor filed this case." *Id.* at 913–14. Counsel here did not represent creditors pre-petition, but instead took on representation after commencement of the case, knowing full well the potential limitations on recovery.

Several other cases on which Counsel relies involve attorneys representing *debtors* in various situations, not creditors. *See, e.g.*, *In re Second Pa. Real Estate Corp.*, 192 B.R. at 670 (awarding fees under the common fund doctrine to counsel who represented a debtor in obtaining a pre-petition settlement); *In re Willis*, 143 B.R. 428 (Bankr. E.D. Tex. 1992) (granting fees to a Chapter 7 debtor's nonbankruptcy counsel from funds obtained from the settlement of a personal injury lawsuit). Notably, both the Code and the Act provide mechanisms for debtors' attorneys to be paid from assets of the estate.

Counsel also cites a Ninth Circuit case that upheld an award of fees under the common fund theory in the bankruptcy context—*C & E Enters., Inc. v. Milton Poulos, Inc. (In re Milton*

11

*Poulos, Inc.)*, 947 F.2d 1351 (9th Cir. 1991). *Milton Poulos* provides little factual context, however, and minimal discussion of its legal analysis. Based on the facts and analysis included in the decision of the bankruptcy court below, it appears the Ninth Circuit awarded fees from a PACA trust outside the bankruptcy estate. *C & E Enters., Inc. v. Milton Poulos, Inc. (In re Milton Poulos, Inc.)*, 94 B.R. 648 (Bankr. C.D. Cal. 1988). In fact, the bankruptcy court expressly stated that the trust assets at issue were not part of the bankruptcy estate because the beneficiary of the trust was not a debtor in the case. *Id.* at 653. Thus, the decision is not persuasive here.[6]

The Court agrees with the analysis in *Cox* and *Fesco* that it cannot abuse the equitable power Congress bestowed upon it to award fees for services outside the scope of applicable bankruptcy law. "Were it the law that creditors who voluntarily perform acts which prove to be beneficial to the estate should or must be allowed compensation, courts of bankruptcy would be confronted in many instances with numerous claims for compensation for 'voluntary' assistance." *Cox*, 122 F.2d at 852. Thus, even in the exceptional cases where a fee enhancement under the common fund doctrine is proper, the Court can grant such an enhancement only pursuant to statutory authority.

As stated in *Fesco*, attorneys representing parties under the Bankruptcy Code may point to a number of provisions allowing fees to be paid from assets of the estate. *See In re Fesco Plastics Corp.*, 996 F.2d at 157 ("The Code specifies when attorney's fees may be awarded. See 11 U.S.C. §§ 327 to 330, 1103, 503(b)(4)."). The same is true of the Bankruptcy Act. *See* 11

---

[6] As mentioned above, several other cases Counsel cites lend little support to the Court in determining the proper outcome here. For example, Counsel also cites to *Rohifard v. Brewer & Prichard, P.C. (In re ABC Dentistry)*, Adv. No. 18-3205, 2019 WL 913356 (Bankr. S.D. Tex. Feb. 21, 2019). Although *Rohifard* involves counsel for a creditor, counsel in that case represented the creditor in a *qui tam* action under the Texas False Claims Act pursuant to a contingency agreement. Moreover, while the opinion mentions fees awarded from a common fund, the fee issue was not before the court when it issued its decision. As a result, *Rohifard* provides little to no insight into how the court reached its decision to award fees and is not helpful here.

U.S.C. § 64(b)(3) (allowing "one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases"); *In re Roadarmour*, 177 F. at 380 (noting that "Section 64b2 of the bankrupt act provides that when property of the bankrupt transferred or sold by him shall have been recovered for the benefit of the estate . . . by the efforts, and at the expense of one or more creditors, the reasonable expenses of such recovery may be paid in full . . . ."); *In re Little River Lumber Co.*, 101 F. at 559 (granting fees where the trustee "leaves it to a creditor of the estate to resist the allowance of a claim").[7]  Significantly, no provision of the Act or Code appear to permit fees for creditor's attorneys whose actions incidentally benefited some creditors, to the detriment of others, while pursuing their clients' best interests.

Counsel here did not represent a petitioning creditor[8] or creditors' committee.  This is not a case like *Little River Lumber Co.* where the trustee declined to act, forcing Counsel to step in, nor did Counsel recover assets for the benefit of the estate as in *Roadarmour.*  And, unlike the attorneys in the cases cited in his brief, Counsel does not pursue a right to payment for pre-petition services, nor has he served as counsel for the Trustee or the Debtor.  Instead, Counsel urges the Court to find generally that his case is most analogous to those in which courts have applied the common fund theory.  However, the Court is not persuaded by this generalization. "As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939).  Reviewing the facts specific to this

---

[7] As Congress amended the Act, it added provisions to allow fees in additional situations; however, those amendments occurred after the filing of this case and, regardless, would not apply to Counsel's services. *See, e.g.*, 11 U.S.C. § 739 (1967) (providing for certain payments to attorneys representing creditors' committees in Chapter XI); 11 U.S.C. §§ 642, 643 (1938) (allowing fees for some actions taken by counsel for creditors in Chapter X cases); 11 U.S.C. § 205 (1933) (allowing reasonable compensation for services in connection with a plan of reorganization for railroads).

[8] The record indicates that White Oak Lumber Company was the sole petitioning creditor in this case.

13

case, the Court finds that it cannot award the fee requested. This Court's equitable powers are restrained in this case by the terms of the Bankruptcy Act. As stated above, even if the Court applied the Bankruptcy Code, no provision of that statute allows payment of the fees requested here from estate assets. Accordingly, without the statutory power to order payment to Counsel from estate funds, the Court is unable to grant the fee enhancement Counsel seeks. The Court will deny the Motion, leaving Counsel to recover under the terms of the fee arrangement negotiated with his clients.[9]

## **CONCLUSION**

For the foregoing reasons, the Court finds that neither the Bankruptcy Act nor the Bankruptcy Code provide the Court with the authority to grant Counsel's requested fee enhancement in this case, and Counsel's Motion will be denied.

A separate Order will be entered contemporaneously herewith.

---

[9] The Court is not unsympathetic to Counsel's request in this case. But for the lack of statutory authority, this may well be a case where counsel would deserve a fee enhancement for his work. This is not to say, however, that the full requested fee would be proper. Without limitation, the Court has concerns regarding Counsel's timekeeping methods. Specifically, his records indicate that his office billed in quarter-hour increments, which generally overstates the time expended. *See In re Computer Learning Ctrs.*, 285 B.R. 191, 218 (Bankr. E.D. Va. 2002). Counsel routinely represents debtors in reorganization cases before this Court and bills in tenth of an hour increments, which is in accord with the Court's expectations and UST guidelines. Additionally, Counsel included over seventeen hours of time billed by an associate at his firm but attributed all of that time to developing this fee application and argument. The Court questions whether it is appropriate to require unrepresented creditors to foot the bill for time Counsel spent arguing that said creditors should be responsible for funding Counsel's fee enhancement. *See In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. at 858 ("[A]ttorneys seeking fees from a common fund are not entitled to compensation for time spent preparing and litigating fee petitions."). Even if a lodestar multiplier cross-check were applied to Counsel's fee request, the Motion provides a deficient starting point.

14