

**SIGNED THIS 22nd day of January, 2025**

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| **Yellow Poplar Lumber Company, Inc.** | ) | |
| Debtor. | ) | Case No. 17-70882 |
| | ) | |

## MEMORANDUM OPINION

This matter initially came before the Court on a notice to creditors filed by the Trustee for the Estate of Yellow Poplar Lumber Company, Inc. on September 1, 2020 regarding the proposed distribution of any unclaimed funds the Trustee may have. The Trustee asserted that any remaining funds should be distributed to the bankrupt and distributed to shareholders or their successors in interest pursuant to Section 66 of the Bankruptcy Act of 1898 (the "Act"), as it existed at the time the bankruptcy case was pending. As further detailed below, both the United States and the State of South Carolina filed responses to this notice and the parties filed extensive briefs on the matter. When the Trustee filed his Notice of Final Accounting on August 30, 2024, the matter became ripe for decision. After a status hearing on September 5, 2024, the Court directed the parties to file any further supplemental briefs or motions, along with an agreed statement of facts, for consideration. The State of South Carolina then filed a Motion to Transfer Venue and Withdraw and Recover Funds. The parties filed supplemental briefs and a Statement

of Agreed Facts, and the matter was taken under advisement. For the reasons stated below, the Court finds that the 1956 amendment to Section 66 of the Act applies to this case. As the unclaimed funds are not subject to escheat, the State of South Carolina's Motion to Transfer Venue and Withdraw and Recover Funds will be denied.

## FINDINGS OF FACT

On July 17, 1928, an involuntary Chapter VII bankruptcy petition was filed against Yellow Poplar Lumber Company, Inc. ("Yellow Poplar") under the Bankruptcy Act of 1898 to have it adjudged a bankrupt.[1] Yellow Poplar was adjudged a bankrupt and the bankruptcy case was closed in the Western District of South Carolina[2] in 1931. On April 3, 2013, suit was filed in the Circuit Court of Buchanan County, Virginia, seeking a determination of the ownership of the natural gas estates of certain parcels of land located in Virginia. According to a 1929 deed from Yellow Poplar's bankruptcy trustee, Yellow Poplar was the last known record holder of the property in Virginia where natural gas was located and extracted. This state court case was removed to the United States Bankruptcy Court for the Western District of Virginia. Later, at the

---

[1]

> The Bankruptcy Reform Act, which was passed in 1978 and enacted the present Bankruptcy Code, provides that:
>
> > A case commenced under the Bankruptcy Act [of 1898] and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.
>
> Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 403(a), 92 Stat. 2549, 2683 (1978). Thus, when a bankruptcy case commenced under the Bankruptcy Act of 1898 is reopened, that Act will continue to apply to it. *E.g., In re Dunning Bros. Co.*, 410 B.R. 877, 883 (Bankr. E.D. Cal. 2009).

*In re Yellow Poplar Lumber Co., Inc.,* 598 B.R. 833, 838 (W.D. Va. 2019) (Jones, J.).
[2] South Carolina was divided into two federal districts at the time, but was reorganized as a single district in 1965. 79 Stat. 951 (1965).

request of the plaintiff, the United States District Court for the Western District of Virginia withdrew the reference of the removed case from the bankruptcy court.

Thereafter, with the agreement of the parties, the United States District Court for the District of South Carolina reopened Yellow Poplar's bankruptcy case and transferred it in its entirety to the United States District Court for the Western District of Virginia. The case was set for jury trial on the ownership claims, but the parties settled the matter, and the ownership case was dismissed from the court's docket. The District Court then referred Yellow Poplar's bankruptcy case to this Court to administer the bankruptcy estate.

Due to the settlement of the ownership claims, the bankruptcy estate of Yellow Poplar received proceeds from gas wells Yellow Poplar had an interest in at the time of its bankruptcy. The Trustee sold those gas rights to close the estate, which proceeds, when added to royalties already received by the estate, left a total of $3,056,148.61 to be disbursed. After making disbursements for administrative expenses and payments to those creditors that could be located, the Trustee had $1,100,352.56 to be distributed to stockholders of 3,400 shares of outstanding Yellow Poplar stock or their successors in interest (none of the original shareholders were still alive at the time this case was administered by this Court).

Once all the heirs of said stockholders were located and they received or rejected their respective disbursements, the Trustee was left with $422,857.12 in unclaimed funds, which were transmitted to the Clerk of this Court. The funds were automatically transferred to the U.S. Treasury on or about September 3, 2024 under the Clerk of Court's standard procedures. The Court has now been asked to consider what party, if any, is entitled to receive these remaining funds.

3

**JURISDICTION**

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the referral made to this Court by Order from the District Court on December 6, 1994 and Rule 3(a) of the Local Rules of the United States District Court for the Western District of Virginia. Additionally, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . referred under subsection (a) of this section, and may enter appropriate orders and judgments . . . ." 28 U.S.C. § 157(b)(1). This Bankruptcy Act case was referred to this Court by the District Court's Order of June 28, 2017. (ECF No. 1).

**DISCUSSION**

This Court conducted a Status Conference in this case on September 3, 2020. A question before the Court on that date was the review of a proposed notice to the unsecured creditors filed by John M. Lamie, the Trustee (the "Trustee") appointed in this case. At a prior hearing, the Court directed the Trustee to file a proposed notice to the successors in interest to the general unsecured creditors who had not yet appeared before the Court or contacted the Trustee to provide proof of their right to claim funds approved for distribution by prior order of the Court. After reviewing the proposed notice, the Court directed the Trustee to contact the United States Attorney for the Western District of Virginia and the Attorney General for the Commonwealth of Virginia to give each an opportunity to be heard on an important question before the Court: Which version of Section 66 of the Act controls the disposition of unclaimed funds in this case?[3]

The United States and the State of South Carolina filed briefs pertaining to the unclaimed funds. Specifically, the United States argues that after five years plus 60 days, the funds should

---

[3] The resolution of this issue was deferred until the actual amount of unclaimed funds was determined.

pass to the U.S. Treasury; on the other hand, the State of South Carolina argues that the funds are subject to escheat back to individual States where deceased shareholders who left no heirs were located.[4] The State of South Carolina also filed a Motion to Transfer Venue and Withdraw and Recover Funds to have this case transferred back to the United States Bankruptcy Court for the District of South Carolina.

The issue arises because Section 66 of the Bankruptcy Act was amended in 1956, after the case was closed. The Debtor's case was initiated in 1928 and the case was closed in 1931. Under the text of the Act, in effect at the time the case was pending, any unclaimed funds would escheat pursuant to state law after being unclaimed for six months. Section 66, as it existed at that time, provides as follows:

> UNCLAIMED DIVIDENDS. a. Dividends which remain unclaimed for six months after the final dividend has been declared shall be paid by the trustee into court.
>
> b. Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt: Provided, that in case unclaimed dividends belong to minors such minors may have one year after arriving at majority to claim such dividends.

Bankruptcy Act of 1898, § 66 (in effect in 1928 and 1931). When the Act was amended in 1956, Section 66 was amended as follows:

> Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them. Such moneys and dividends shall be deposited and withdrawn as provided in title 28, United States Code, section 2042, and shall not be subject to escheat under the laws of any State.

---

[4] This Court further directed the Trustee to serve notice on the Attorneys General of the States of Ohio, Kentucky, West Virginia, South Carolina, New York, California, Arizona, Florida, Minnesota, and Virginia so that each might be heard regarding the disposition of any surplus funds. Only South Carolina responded to the Trustee's notice. *See* Revised Notice of Hearing and Opportunity to be Heard on the Issue of Unclaimed Funds, ECF No. 188.

Bankruptcy Act of 1898, § 66(a) (amended 1956). Additionally, 28 U.S.C. § 2042 (prior to 1982) provided:

> In every case in which the right to withdraw money deposited in court has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

The amended statute provides that unclaimed funds were not subject to escheat under the laws of any state. Rather, funds which went unclaimed for sixty days from the declaration and distribution of the final dividend under Section 66a and for five years from the deposit of such moneys would pass to the United States.

This case faces the issue of whether the language of the Act as it existed in 1928 or 1931, the dates of the Debtor's bankruptcy case filing and closure, applies to the unclaimed funds in this case, or whether the 1956 amendment applies. If the Act is applied as it existed at the time the bankruptcy case was actually pending, the unclaimed funds in this case could escheat to a number of individual states. If the 1956 amendment applies, the unclaimed funds are not subject to escheat under state law and will pass to the United States after five years plus 60 days.

Only one case found by the Court has considered this issue. In *Application of Com. of Mass.*, 206 F. Supp. 106 (D. Mass. 1962), the United States District Court for the District of Massachusetts addressed a case where a bankruptcy commenced prior to the 1956 amendments, but unclaimed funds were deposited after the amendments were enacted. The court held that the property a state claims pursuant to an escheat needed to exist prior to August 1, 1956 (the date of amendment) in order to effectively escheat under the Act prior to the amendment of Section 66. Since the funds in that case did not exist prior to the date of amendment, the funds could not be

subject to escheat and would pass to the United States after five years plus 60 days. Similar facts exist here. An effective escheat did not occur, and could have not occurred, prior to this case being closed in 1931. The funds resulting in the gas royalties simply did not exist. They only came into existence after the 1956 amendment, and only then could they have been eligible for escheat – which was no longer permitted by Congress.

The parties make a number of other arguments regarding whether the Act as it existed in 1928 or the 1956 amendments applies.[5] The United States has argued that under *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994), and *In re Anderson*, 811 F.3d 166, 172 (4th Cir. 2016), the Court should follow the "general rule" that the law in effect when it renders its decision applies. Thus, since Yellow Poplar's bankruptcy is governed by the Act, the Act as it existed at the time of its repeal in 1978 should apply, including the 1956 amendments. The United States also argues that any claim the States may have to the unclaimed funds never vested because, in the 1956 amendments, Congress expressly denies States the right to escheat unclaimed bankruptcy moneys. Since Congress intended for the amendments to prevent the escheat of unclaimed funds to individual states, the amendments should control.[6]

In *In re Moneys Deposited*, 243 F.2d 443 (3d Cir. 1957), the Third Circuit addressed a case where the Commonwealth of Pennsylvania sought to escheat unclaimed dividends from bankruptcy proceedings. In affirming the district court's order that directed the funds to be paid to the Commonwealth, the court explained that "a prospective construction is the more

---

[5] The Trustee also asserted that the 1956 amendments do not apply and that the unclaimed funds should be returned to the bankrupt, but the Trustee has since been released from his duties and is no longer taking a position on the matter.

[6] See *Hudson Cnty. Welfare Dep't v. Roedel*, 34 B.R. 689 (D.N.J. 1983), *aff'd,* 734 F.2d 5 (3d Cir. 1984), and *aff'd sub nom. In re Roedel*, 734 F.2d 7 (3d Cir. 1984), and *Matter of Reynolds*, 726 F.2d 1420 (9th Cir. 1984).

appropriate where as here it will eliminate a serious question of constitutional validity which would arise if the statute were to be given retroactive effect." *Id.* at 448.

However, the present case is distinguishable from the Pennsylvania case. First, the funds in *In re Moneys Deposited* had, in fact, escheated to Pennsylvania before the 1956 amendment to Section 66. A state court in Pennsylvania had entered a decree declaring that the unclaimed funds had escheated to the Commonwealth and this decision was later confirmed by the District Court for the Western District of Pennsylvania. Thus, the funds were found to escheat under state law, not federal law. Had the statute applied retroactively and affected funds that escheated by court order prior to its passage, the court stated, the outcome may have been different and perhaps implicated constitutional issues. However, in the case before this Court, the funds did not escheat prior to the 1956 amendment, so there is no inherent conflict between state and federal law. While the 1956 amendment does take escheat power from the States, Congress has the authority to take certain powers away from the States if it intends to do so and does so clearly. Thus, there is no constitutional question this Court must resolve.

The State of South Carolina cites *United States v. Klein,* 303 U.S. 276, 58 S. Ct. 536, 82 L. Ed. 840 (1938), as authority from the Supreme Court which would require the funds to escheat to the States. However, this reliance is misplaced. The escheat in *Klein* did not take place in the context of a bankruptcy, so the case does not interpret the Act or whether the 1956 amendment to Section 66 applies. Also, to the extent *Klein* does apply to the issues presented in this case, it was overruled by the 1956 amendments to Section 66. *See Arkansas v. Federated Dep't Stores*, 175 B.R. 924, 932 (S.D. Ohio 1992) (the 1956 amendment to the Act was to specifically overrule *Klein*).

8

This Court will follow the analysis in *Application of Com. of Mass*. Here, while Yellow Poplar went bankrupt in 1928, the natural gas royalties that give rise to the unclaimed funds did not manifest themselves until many decades after Act case was closed. Since the funds did not exist prior to 1956, and therefore could not have escheated to any state prior to the date of amendment, the 1956 amendment to Section 66 applies. Further, as stated in *In re Hawaii Corp.,* No. 76-00512, 2010 WL 2604802 at *7 (Hawaii June 25, 2010), "Section 66a and Rule 310 are more protective of the creditors and stockholders who do not receive or do not cash their distribution checks. . . . Section 66a preserves the unclaimed funds for the rightful owners, with no time limit."[7] 28 U.S.C. § 2042 permits such parties to petition the Court for those funds should they prove their entitlement to them. If the State of South Carolina can prove it is entitled to any portion of the funds, other than through escheat, it remains free to do so.[8]

## CONCLUSION

For the reasons stated above, the Court determines that the 1956 amendment to Section 66 of the Bankruptcy Act applies to this case, and the Motion to Transfer Venue and Withdraw and Recover Funds filed by the State of South Carolina will be denied. A separate order will follow.

---

[7] Federal Rule of Bankruptcy Procedure 310 of the Bankruptcy Act is consistent with Section 66, as amended. Rule 310 states as follows: "**Unclaimed Funds.** Sixty days after the distribution of the final dividend, the trustee shall stop payment of all checks then unpaid and file with the clerk of the district court a list of the names and addresses, so far as known, of the persons entitled to such payments and the amounts thereof. The unclaimed funds shall thereupon be deposited in the registry of the United States district court and shall be withdrawn as provided in Title 28, U.S.C., § 2042." The Federal Rules of Bankruptcy Procedure (1973), which the District Court has determined are applicable to this case, include the above version of the Rule. (ECF No. 1, p.4).

[8] The State of South Carolina contends that "the appropriate procedure is to pay the unclaimed funds into the registry of the court and then transfer the case and funds back to the District of South Carolina for any future action, such as escheatment, that may thereafter arise." (ECF No. 348, p.2-3). Because the Court believes the 1956 amendment to Section 66 applies to this case, and the unclaimed funds are not subject to escheat, the Motion to Transfer Venue and Withdraw and Recover Funds will be denied.